**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-01277-NYW

JUAN A. CARRAZCO,

      Plaintiff,

v.

GARFIELD COUNTY SHERIFF DEPUTY MORRISON,

      Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment") filed on May 5, 2022. [Doc. 40]. Upon review of the Motion and related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the following reasons, the Motion for Summary Judgment is respectfully **GRANTED in part**.

### BACKGROUND

Plaintiff Juan A. Carrazco ("Plaintiff" or "Mr. Carrazco") initiated this civil action on May 10, 2021. [Doc. 1]. Mr. Carrazco alleges that Defendant Garfield County Sheriff Deputy Amber Morrison ("Defendant" or "Deputy Morrison") violated his constitutional and state-law rights while he was detained at the Garfield County Jail. *See generally* [*id.*]. Plaintiff asserts the following claims for relief: (1) a claim under 42 U.S.C. § 1983 based on his "known civil rights to be free from excessive force and/or bodily injury" ("Claim One"); (2) a § 1983 excessive force claim under the Fourth and Fourteenth Amendments ("Claim Two"); (3) a state-law battery claim ("Claim Three"); and (4) a state-law negligence claim ("Claim Four"). [*Id.* at 3–5].

On May 5, 2022, Defendant filed the instant Motion for Summary Judgment, seeking judgment in her favor on each of Plaintiff's claims. [Doc. 40]. Plaintiff has responded in opposition to the Motion [Doc. 48]; Defendant replied [Doc. 50]; and Plaintiff filed a Sur-Reply with leave of Court [Doc. 62]. The Motion is thus ripe for disposition, and I consider the Parties' arguments below.

## UNDISPUTED MATERIAL FACTS

The Court draws the following material facts from the record before the Court.

1.      On May 10 and 11, 2019, Mr. Carrazco was housed at Garfield County Detention Facility ("GCDF"). [Doc. 40 at ¶ 1; Doc. 48 at ¶ 1; Doc. 40-1 at 99:17–19; 100:11–18].[1] He was a pretrial detainee in a trustee pod. [Doc. 40 at 1; Doc. 48 at 2].

2.      At the time, Defendant was a deputy with the Garfield County Sheriff's Office. [Doc. 40 at ¶ 5; Doc. 48 at ¶ 5; Doc. 40-2 at 73:14–15].[2]

3.      The cells in the trustee pod do not have doors; instead, they consist of three walls with an open front, with a yellow line marking the boundary of the cell where a cell door would otherwise be. [Doc. 40 at ¶ 4; Doc. 48 at ¶ 4; Doc. 40-2 at 25:24–26:5, 62:18–63:8].

4.      Deputy Morrison was trained "that for safety and security reasons, she was not allowed to enter an inmate's cell alone when the inmate was unsecured in the cell, when the inmate was sleeping in the cell, or when another inmate was unsecured in the pod." [Doc. 40 at ¶ 5; Doc. 40-2 at 37:21–38:12].[3]

---

[1] When citing a transcript, the Court cites the document number generated by the Electronic Case Filing ("ECF") system, but the page and line numbers generated by the transcript.

[2] Although Plaintiff attempts to dispute other portions of Defendant's Paragraph 5, he does not dispute that Plaintiff was a deputy on May 10–11, 2019. [Doc. 48 at ¶ 5].

[3] Plaintiff attempts to dispute this fact, but does not meaningfully do so. Instead, he states that

5. On the night of May 10, 2019, Mr. Carrazco asked Deputy Morrison to wake him up "in the early morning hours of May 11, 2019, for med pass."[4] [Doc. 40 at ¶ 7; Doc. 48 at ¶ 7; Doc. 40-2 at 61:18–20].

6. At around 3:30 a.m. on May 11, 2019, Deputy Morrison entered the trustee pod per Mr. Carrazco's request. [Doc. 40 at ¶ 8; Doc. 48 at ¶ 8; Doc 40-3 at 00:00–00:10].[5]

7. Deputy Morrison intended to wake Mr. Carrazco up so he could prepare for med pass, pursuant to Plaintiff's request. [Doc. 40 at ¶ 9; Doc. 48 at ¶ 9; Doc. 40-2 at 61:13–20].[6]

_____

"Plaintiff asked Defendant to awaken him for the med-line and explained that he would need to be tapped on the shoulder or Defendant could knock on his bunk because Plaintiff slept with ear plugs in his ears. Plaintiff recalls Defendant stating 'okay.'" [Doc. 48 at ¶ 5 (citing Doc. 40-2 at 114:8–25, 115:1–3)]. Even construing all evidence in Plaintiff's favor, Plaintiff does not explain why Defendant's purported agreement to Plaintiff's request that Defendant enter his cell rebuts the evidence of Defendant's training. Accordingly, the Court deems this fact undisputed for purposes of the Motion. Fed. R. Civ. P. 56(e)(2).

[4] Neither Party explains what "med pass" refers to. For purposes of background context only, the Court notes that Plaintiff described it as follows: "The jail has strict – they have a strict schedule. And if I'm taking morning meds, it has to be at 4:30 in the morning and everybody that takes morning meds has to get up and line up for their meds. And if you don't get up, they'll knock on your cell, say, 'Hey, are you getting your meds?' And you have to verbally tell them, 'No, I don't want my meds today,' if you don't want them." [Doc. 40-1 at 99:4–11]. The Court notes that in other cases, "med pass" refers to a period of time when medical personnel at a detention facility distribute medication to inmates and/or detainees. *See Jarvis v. McLauglin*, No. 20-cv-02028-CNS-GPG, 2022 WL 4388399, at *2 (D. Colo. Sept. 22, 2022).

[5] Defendant's Exhibit C is a conventionally submitted video recording of the incident. [Doc. 40-3]. When citing to the video, the Court cites to the approximate timestamps depicting the referenced portion of the video.

[6] Plaintiff "[a]dmit[s] and [d]en[ies]" this statement, stating that "Plaintiff asked to be awakened for med-line, but Defendant woke Plaintiff up too early. Plaintiff states Defendant stated she erroneously woke him for work in the kitchen." [Doc. 48 at ¶ 9]. In support, he cites his own deposition testimony wherein he stated: "She says she thought I was a kitchen worker. On the list, it strictly says that I'm a laundry worker. You know, if she would've checked her list and see[n] where I'm supposed to be, at what time, she could have known that I'm not supposed to be woken up at 3:30 in the morning." [Doc. 48-2 at 117:16–20]. But Plaintiff does not explain why the timing of Defendant's attempt to wake Plaintiff or Defendant's mistaken belief as to Plaintiff's GCDF job is material in this matter, or explain why her mistaken belief rebuts Defendant's assertion and evidence that Defendant intended to wake Plaintiff for med pass. [Doc. 48 at ¶ 9].

3

8.      Deputy Morrison saw Mr. Carrazco sleeping in the bottom bunk at the back of his cell.  [Doc. 40 at ¶ 11; Doc. 48 at ¶ 11; Doc. 40-4 at 4].

9.      Deputy Morrison attempted to wake Mr. Carrazco "through multiple verbal announcements, but Plaintiff did not wake up."  [Doc. 40 at ¶ 12; Doc. 40-2 at 37:12–17].[7]

10.     Deputy Morrison then picked up "a compressed, almost empty roll of toilet paper" and "overhanded that toilet paper roll" in Mr. Carrazco's direction, but Mr. Carrazco did not wake up.  [Doc. 40 at ¶ 13; Doc. 48 at ¶ 13; Doc. 40-2 at 38:21–39:8].

11.     Deputy Morrison again attempted to verbally wake Mr. Carrazco.  [Doc. 40 at ¶ 14; Doc. 40-4 at 4].[8]

12.     Deputy Morrison, "perceiving it would be helpful to the entire pod of inmates to find a way to wake Plaintiff without waking the entire pod," picked up "what she presumed to be a small pack containing playing cards."  [Doc. 40 at ¶ 15; Doc. 48 at ¶ 15; Doc. 40-4 at 4].

13.     Deputy Morrison "underhanded" the pack of cards in Mr. Carrazco's direction. [Doc. 40 at ¶¶ 16–17; Doc. 40-1 at 99:15–19, 104:13–106:1; Doc. 40-2 at 41:15–21, 69:4–22].[9]

---

Because Plaintiff's response does not actually rebut Defendant's assertion, the Court deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

[7] Plaintiff responds that he "cannot admit or deny" this assertion because the video of the incident does not contain audio, but states that, based on the video, "it appears Defendant [was] making verbal attempts to awaken Plaintiff." [Doc. 48 at ¶ 12].  The Court notes that Defendant does not rely on the video evidence to support this assertion, but her own testimony, and Plaintiff does not submit any evidence to rebut Defendant's testimony.  The Court deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

[8] *See supra* n. 7.

[9] Deputy Morrison asserts that she "lightly underhanded the pack of cards by bringing it down to her side and gently propelling it forward in Plaintiff's direction." [Doc. 40 at ¶ 17].  Mr. Carrazco does not explicitly dispute that Deputy Morrison "underhanded" the deck of cards, but instead states that "Defendant takes a definite step forward as she throws the deck and intends to hit Plaintiff with the deck of cards." [Doc. 48 at ¶ 17].  Construing Mr. Carrazco's statement as an attempt to dispute Defendant's assertion, the Court notes that the video evidence clearly demonstrates that Deputy Morrison underhanded the pack of cards.  *See* [Doc. 40-3 at 00:30–

14.     The pack of cards struck Mr. Carrazco and woke him up.  [Doc. 40 at ¶ 17; Doc. 40-1 at 99:15–19, 104:13–106:1].[10]

15.     Mr. Carrazco alleges in his Complaint that the contact from the pack of cards caused "significant injury to [his] left testicle."  [Doc. 1 at ¶ 2].[11]

16.     An ultrasound of Mr. Carrazco's testicular region taken on May 17, 2019 showed "a normal study showing normal testicles with normal flow," "no evidence of severe traumatic injury, shattered testicle, significant testicular hematoma," and "nothing to suggest testicular torsion or infection such as epididymitis or orchitis."  [Doc. 40 at ¶ 18; Doc. 48 at ¶ 18; Doc. 40-1 at 140:1–142:6].[12]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could

---

00:39]; *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (where there is video evidence, a court must view facts "in the light depicted by the videotape" if the nonmoving party's "version of events is so utterly discredited by the record").  Insofar as Plaintiff disputes whether Deputy Morrison underhanded the cards "lightly," which is not clear from his Response, the Court finds this dispute is not material for purposes of this Motion.

[10] Plaintiff states that the entirety of Paragraph 17 is disputed, but does not actually dispute that the deck of cards struck Plaintiff and woke him up.  [Doc. 48 at ¶ 17].  The Court deems this fact, which forms the basis of Plaintiff's claims, undisputed.  Fed. R. Civ. P. 56(e)(2).

[11] The Court includes this allegation for contextual background purposes only and does not consider it an undisputed material fact for purposes of the pending Motion.

[12] Mr. Carrazco "agrees the medical record containing the results of an ultrasound taken on May 17, 2019 showed 'normal testicles with normal flow,'" but states that "[t]his is one evaluation of many that followed and it does not address Plaintiff's subsequent pain after being hit with the deck of cards," and "[t]he ultrasound taken on May 17, 2019 is a single procedure that does [sic] encompass Plaintiff's continued pain.  Exploration into the actual cause of the continued pain ensued and Plaintiff's Expert Witness has stated he believes the pain to be nerve related."  [Doc. 48 at ¶ 18 (citing Doc. 48-4 at 111:12–17, 113:7–10)].  Because Plaintiff does not dispute Defendant's assertion, the Court deems this fact undisputed.

resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

## ANALYSIS

Deputy Morrison argues that she is entitled to summary judgment on each of Mr. Carrazco's claims.  First, she argues that Claim One should be dismissed as superfluous because (1) "there is no generalized civil right to be free from bodily injury" and (2) it is duplicative of Claim Two, Plaintiff's excessive force claim.  [Doc. 40 at 6–7].  Then, she asserts that summary

judgment on Claim Two is appropriate under the doctrine of qualified immunity, arguing that (1) Mr. Carrazco has not established a violation of his constitutional rights, and (2) any constitutional right violated was not clearly established at the time of the violation. [*Id.* at 7, 13–16]. With respect to the state-law claims, she argues that Claim Three, Plaintiff's battery claim, should be dismissed as untimely under the statute of limitations. [*Id.* at 16]. And finally, she argues that summary judgment is appropriate on Plaintiff's negligence claim based on timeliness and immunity grounds. [*Id.* at 18]. The Court addresses these arguments below.

## I.   Plaintiff's Generic § 1983 Claim

First, Defendant argues that Plaintiff's first claim, captioned "42 [U]SC § 1983," *see* [Doc. 1 at 3], must be dismissed. In his Complaint, Plaintiff does not indicate under which constitutional amendment this claim arises, stating only that the claim is based on "his known civil rights to be free from excessive force and/or bodily injury." [*Id.* at ¶ 22]. Defendant argues that this claim is legally untenable for two reasons. First, she argues that "there is no generalized civil right to be free from bodily injury" and maintains that Plaintiff cannot transform the Fourteenth Amendment's Due Process Clause "into 'a font of tort law to be superimposed upon whatever systems may already be administered by the states." [Doc. 40 at 6–7 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976))]. Second, she argues that Claim One, insofar as it asserts a violation of the right to be free from excessive force, is duplicative of Claim Two. [*Id.* at 7].

Mr. Carrazco's response to this argument is difficult to understand, as he does not clarify the exact constitutional basis of his first claim. He first states that "case law has established that there is a Fourteenth Amendment right to be free from bodily injury." [Doc. 48 at 8]. He continues that "there may be a substantive due process violation when there is an intentional act," and because he has alleged "that Defendant's intentional act of throwing a deck of playing cards at him

deprived him of his right to be free from bodily injury," his "claim of a Fourteenth Amendment violation is not based on the tort of negligence."   [*Id.* at 9 (emphasis omitted)].   And finally, he states that his first claim is not duplicative of the second claim because he "uses § 1983 to raise a claim that he was deprived of his civil rights to be free from excessive force and/or bodily injury." [*Id.*].[13]

Insofar as Mr. Carrazco bases his first claim on the right to be free from excessive force, it is duplicative of Claim Two, which is based on an "unlawful use of force."  *See* [Doc. 1 at 4]. Plaintiff does not identify any meaningful difference between "unlawful" force or "excessive" force as to Claims One and Two, *see* [Doc. 48], and the Court discerns none.  *See* [Doc. 1 at ¶ 32 (in Claim Two, Plaintiff alleging that Defendant "violated the Fourth Amendment's prohibition on use of excessive force"); [Doc. 48 at 10 (Plaintiff referring to Claim Two as an excessive force claim)]; *Pressley v. Pacheco*, No. 17CV1715-MMA (MDD), 2020 WL 3448248, at *2 (S.D. Cal. June 24, 2020) ("When officers use excessive force against pretrial detainees, they violate the detainees' Fourteenth Amendment right to be free from unlawful force."); *Jennings v. Fuller*, No. 13-13308, 2017 WL 2242357, at *13 (E.D. Mich. May 23, 2017) (concluding that "unlawful force" is the equivalent of "excessive force").

Mr. Carrazco also maintains that "case law has established that there is a Fourteenth Amendment right to be free from bodily injury," relying solely on an unpublished 2003 case from the District of Utah that is not locatable in any online reporters: *Dahl v. United States*, District of Utah Case No. 2:01-cv-00551-DB.   [Doc. 48 at 8].   The Court has independently reviewed that decision via the CM/ECF system, and contrary to Plaintiff's suggestion, the court in *Dahl* did not

---

[13] The Court notes that the Final Pretrial Order, signed by Plaintiff, references "Plaintiff's single federal claim."   [Doc. 56 at 1].

plainly recognize a Fourteenth Amendment right to be free from bodily injury.  Rather, the court merely referenced the *Dahl* plaintiffs' *own* framing of their constitutional rights: "Although plaintiffs' brief also addresses their Fourteenth amendment right to be free from bodily injury here, the argument is repeated again in the fourth cause of action.  The Court addresses this claim in its discussion of the fourth cause of action."  [*Dahl*, ECF No. 15 at 7 n.1].  The *Dahl* court went on to dismiss the plaintiffs' fourth claim for failure to allege municipal liability without addressing the substance of the plaintiffs' asserted constitutional right.  [*Id.* at 8–9].  It appears misleading for Plaintiff to rely on *Dahl* to argue that there is an "established"  Fourteenth Amendment right to be free from bodily injury.

This Court has no obligation to perform legal research on behalf of a party.  *See Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016).  However, the Court's independent research has yielded some case law referencing a substantive due process right to be free from intentionally inflicted bodily injury.  *See, e.g.*, *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty.*, 34 F.3d 345, 348 (6th Cir. 1994) ("If the defendants in the case at bar had deliberately decided to inflict bodily injury on the plaintiff, the caselaw indicates that a constitutionally protected 'liberty' interest would have been compromised."); *Pantastico v. Dep't of Educ.*, 406 F. Supp. 3d 865, 877–78 (D. Haw. 2019) ("Under the Due Process Clause, people 'have a fourteenth amendment liberty interest in freedom from bodily injury.'") (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996)).  Courts often refer to this right in conjunction with the right to bodily integrity.  *See, e.g.*, *Pantastico*, 406 F. Supp. 3d at 878; *Newell v. Cent. Michigan Univ. Bd. of Trustees*, 461 F. Supp. 3d 589, 598 (E.D. Mich. 2020), *aff'd on other grounds*, No. 20-1864, 2021 WL 3929220 (6th Cir. Sept. 2, 2021); *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 878 (6th Cir. 2020).  The right to bodily integrity is grounded in the Due Process Clause and is well-established.  *Williams v.*

*Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008); *Albright v. Oliver*, 510 U.S. 266, 272 (1994). "[T]his right is fundamental where the magnitude of the liberty deprivation that the abuse inflicts upon the victim strips the very essence of personhood." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) (quotation, bracket, and ellipses omitted). But not "every governmental act which intrudes upon or threatens to intrude upon an individual's body invokes the Fourteenth Amendment." *Id.* at 1064.

This Court is not inclined to construe Claim One as asserting a substantive due process claim based on the violation of Plaintiff's right to bodily integrity; in both the Complaint and the Response to the Motion for Summary Judgment, Plaintiff uses the term bodily *injury*, and he makes no argument invoking the right to bodily *integrity*. *See* [Doc. 1 at ¶ 22; Doc. 48 at 8–9]. Similarly, Plaintiff does not use the phrase "bodily integrity" at all in the Final Pretrial Order. *See* [Doc. 56]. Plaintiff is represented by counsel and is not entitled to a liberal construction of his filings, *see Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007), nor will the Court make arguments on behalf of parties that they have not made themselves. *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015). Moreover, "the Supreme Court has recognized a liberty interest in bodily integrity in only very limited circumstances," such as in cases involving "end-of-life decisions, birth control decisions, and instances where individuals are subject to dangerous or invasive procedures where their personal liberty is being restrained." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citations omitted). Plaintiff does not explain why his case fits within these limited circumstances, and the Court is not convinced that it does.

Even if the Court were to construe Claim One as asserting a violation of the right to bodily injury and/or integrity, the Court would still conclude that Claim One cannot survive the Motion for Summary Judgment. The Court notes that Plaintiff has furthered no substantive argument

defending the claim in his Response, instead relying solely on the allegations in his Complaint—specifically, that he "has alleged that Defendant's intentional act of throwing a deck of playing cards at him deprived him of his right to be free from bodily injury." *See* [Doc. 48 at 9]. But the question before the Court is not whether Plaintiff's allegations are sufficient, but whether Defendant is entitled to judgment as a matter of law. In her Reply, Defendant argues that the challenged conduct was negligent at most and does not rise to the level of a substantive due process violation. [Doc. 50 at 9]; *see also* [Doc. 40 at 10]. The Court respectfully agrees.

"The substantive due process doctrine has two strands: 'One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience.'" *Kuyper v. Bd. of Cnty. Comm'rs of Weld Cnty.*, No. 09-cv-00342-PAB-MEH, 2010 WL 1287534, at *4 (D. Colo. Mar. 30, 2010) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). The Tenth Circuit "appl[ies] the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1117 (10th Cir. 2021).

The conscience-shocking standard is difficult to define, *Moore*, 438 F.3d at 1041, but conscience-shocking conduct "must be egregious and outrageous." *Est. of Carrigan v. Park Cnty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019). To meet this high threshold, a plaintiff must show that "a government actor arbitrarily abused [her] authority or employed it as an instrument of oppression," *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (brackets and quotation omitted), and the challenged conduct must meet a "degree of outrageousness and magnitude of potential or actual harm [that is] truly conscience shocking." *Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir. 2012) (cleaned up). "The ultimate standard for determining whether

there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore*, 438 F.3d at 1040 (quotation and citation omitted). "Whether specific conduct shocks the conscience is a question of law for the Court." *Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty.*, 984 F. Supp. 2d 1144, 1151 (N.D. Okla. 2013) (citing *Perez v. Unified Gov't of Wyandotte Cnty.*, 432 F.3d 1163, 1168 n. 4 (10th Cir. 2005)). "Although it is a question of law, the question often turns on a close examination of evidence, including: (1) the contextual facts; (2) the particular environment in which the state action occurs; and (3) whether the state actor had time to deliberate or was acting under exigent circumstances." *Id.* at 1151–52 (citations omitted).

Even construing the evidence in the light most favorable to Plaintiff, Defendant "obviously did not make a deliberate decision to inflict pain and bodily injury on the plaintiff." *Lewellen*, 34 F.3d at 348. Indeed, Plaintiff has directed the Court to no evidence that Deputy Morrison intended to cause injury or pain to Plaintiff. While she "may have been negligent, . . . it is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest." *Id.* (first citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); then *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 201–02 (1989); and then *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). It is undisputed that Defendant, after multiple unsuccessful attempts to wake Plaintiff, "underhanded" a pack of cards in his direction. *See* [Doc. 40-3 at 00:30–00:39]; *supra* n.9. The Court cannot conclude that this act was so "egregious and outrageous" so as to shock the conscience. *See Est. of Carrigan*, 381 F. Supp. 3d at 1326; *Schwartz*, 702 F.3d at 586; *Garcia by Garcia v. Miera*, 817 F.2d 650, 655 (10th Cir. 1987) (agreeing that "the right to be free of state intrusions into realms of personal privacy and bodily security" applies to "means *so brutal, demeaning, and harmful* as literally to shock the conscience

of a court" (emphasis added)).  Accordingly, the Court agrees with Defendant that the challenged conduct is "categorically beneath the threshold of constitutional due process."  [Doc. 50 at 9].  For these reasons, the Motion for Summary Judgment is **GRANTED** with respect to Claim One.

## II.   Plaintiff's Excessive Force Claim

Defendant next argues that she is entitled to summary judgment on Claim Two, Plaintiff's excessive force claim.  [Doc. 40 at 7].  She asserts that she is entitled to qualified immunity on this claim because (1) there was no constitutional violation; and (2) even if there was a constitutional violation, the constitutional right at issue was not clearly established at the time of the violation. [*Id.* at 13–15].  Mr. Carrazco responds that the doctrine of qualified immunity is inapplicable here, as he sues Defendant in her official, rather than individual, capacity.  [Doc. 48 at 9].  In any event, he asserts that his claim should survive summary judgment because "[t]here are questions of fact regarding whether Defendant's purposeful act of throwing a deck of playing cards at Plaintiff was objectively unreasonable," i.e., whether that act amounted to excessive force.  [*Id.* at 10–15, 16].

### A.   The Constitutional Basis of Claim Two

The excessive force claim is brought under the Fourth and Fourteenth Amendments, [Doc. 1 at 4], and Plaintiff continues to assert violations of his Fourth and Fourteenth Amendment rights in his Response.  [Doc. 48 at 11].  "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  "Thus, a district court evaluating an excessive force claim must first 'isolate the precise constitutional violation with which [the defendant] is charged' because '[t]he choice of amendment matters.'"  *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (quoting *Porro*, 624 F.3d at 1325 (alterations in original)). Determining which amendment applies to an allegation of excessive force requires consideration

of "where the [plaintiff] finds himself in the criminal justice system." *Id.* (quoting *Porro*, 624 F.3d at 1325 (alterations in original)). For example, where a plaintiff is a convicted prisoner, his claims arise under the Eighth Amendment; however, where the plaintiff is a pretrial detainee, his claims arise under the Fourteenth Amendment. *See id.* And the Fourth Amendment applies, for example, where the plaintiff alleges excessive force during an investigation or an arrest, *Tolan v. Cotton*, 572 U.S. 650, 656 (2014), or after a plaintiff is arrested without a warrant and before a probable cause determination has been made. *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019).

Here, it is undisputed that Mr. Carrazco was a pretrial detainee at the time of the events giving rise to this case, [Doc. 40 at 1; Doc. 48 at 2], and he does not substantively explain why the Fourth Amendment applies in this case. *See* [Doc. 48]. Accordingly, the excessive force claim is properly analyzed under the Fourteenth Amendment. *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (noting that because plaintiff was a pretrial detainee, her excessive force claim was properly asserted under the Fourteenth Amendment).

### B. Whether Defendant is Sued in Her Official or Individual Capacity

In her Motion, Deputy Morrison raises a qualified immunity defense to Plaintiff's excessive force claim. [Doc. 40 at 7]. But in his Response to the Motion for Summary Judgment, Mr. Carrazco asserts that Defendant is not entitled to qualified immunity because she is sued only in her official capacity, and not in her individual capacity. [Doc. 48 at 9]; *see also Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005) ("A qualified immunity defense is only available to parties sued in their individual capacity."). In support of his argument, Plaintiff notes that he sued Defendant as "Garfield County Deputy Morrison." [Doc. 48 at 10; Doc. 1 at 1]. On Reply, Defendant disputes that she is sued in her individual capacity. [Doc. 50 at 6]. She argues that

(1) this is the first time that Plaintiff has argued that he is suing Defendant in her official capacity; (2) the Complaint "totally omit[s] robust factual assertions required to describe an official custom, policy, or practice, which were both [the] 'moving force' [behind the constitutional violation] and undertaken with deliberate indifference," and (3) Plaintiff cannot assert a new official-capacity theory in response to the Motion for Summary Judgment.  [*Id.* at 6–7].

As noted by Defendant, the Complaint does not indicate whether Defendant is sued in her individual or official capacity.  [Doc. 1 at 1].  "[I]f the complaint does not clearly indicate that defendants are being sued individually and/or in their official capacities, the determination must be made by reviewing 'the course of the proceedings.'"  *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  Specifically, the Tenth Circuit directs courts to "look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability."  *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).

Here, Plaintiff seeks "monetary damages (special, compensatory, and punitive) against Defendant, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper."  [Doc. 1 at ¶ 3].  A request for money damages generally "is not a strong indicator" as to whether the suit is raised against a defendant in her official or individual capacity, *see Bell v. Pollack*, No. 07-cv-00496-REB-MEH, 2008 WL 652324, at *7 (D. Colo. Mar. 10, 2008), but a request for punitive damages suggests the individual nature of a lawsuit.  *See Pride*, 997 F.2d at 715.  On the other hand, the references to Defendant by her official title could suggest an official-capacity suit.  *See Fullen v. City of Salina*, No. 21-4010-JAR-TJJ, 2021 WL

4476780, at *4 (D. Kan. Sept. 30, 2021); *Neighbors v. Lawrence Police Dep't*, No. 15-CV-4921-DDC-KGS, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016).[14]

There is nothing in particular in Plaintiff's allegations that plainly demonstrates that Defendant is sued in her official capacity, such as references to official policies or procedures of Garfield County, but there is similarly nothing that obviously suggests that Defendant is sued in her individual capacity, either. *See* [Doc. 1]. Nor are the Scheduling Order or the Final Pretrial Order enlightening in this regard. [Doc. 15; Doc. 56].[15]

After a review of the docket and the applicable case law, the Court concluded that it is appropriate to defer to Plaintiff's characterization of his own claims, finding it against the interest of judicial fairness to recharacterize Plaintiff's federal claims, against his wishes, after the close of discovery in this case and after the dispositive motions deadline had passed. Based on the Court's independent research, clarification of capacity issues is typically accomplished much earlier in the case than at the summary-judgment stage, which permits the plaintiff to replead her claims if a court concludes they lack clarity. Indeed, although Defendant argues that this is the "first time" Plaintiff has argued that he is suing Defendant in her official capacity only, there were no Rule 12 motions filed in this case, so it appears that responding to the Motion for Summary Judgment was Plaintiff's first opportunity to raise this argument in a formal filing. Had Defendant sought

---

[14] In his Sur-reply, Plaintiff argues that "the Complaint does not even reference Defendant by her first name, which further indicates Plaintiff's intent not to sue her in an individual capacity." [Doc. 62 at 3]. This statement is misleading. Plaintiff clearly indicates in his Complaint that he did not know Defendant's first name. *See* [Doc. 1 at ¶ 10].

[15] While Defendant asserted a qualified immunity defense in her Answer and in the Scheduling Order, [Doc. 14 at ¶ 50; Doc. 15 at 2], this simply demonstrates Defendant's interpretation of Plaintiff's claims, not Plaintiff's own classification of his claims. To be sure, these filings should have put Plaintiff on notice that Defendant understood the claims against her to be individual-capacity claims, and the Parties could have clarified any confusion long before the summary-judgment stage. But the Court is disinclined to rely on Defendant's framing of the claims, which Plaintiff asserts was mistaken, over Plaintiff's characterization of his own claims.

additional clarification as to the nature of Plaintiff's claims, she could have filed a motion for a

more definite statement under Rule 12(e) or sought clarification directly from Plaintiff. At bottom,

both Parties could have been more proactive in clarifying Plaintiff's claims, and the Court is not

inclined to disregard Plaintiff's own characterization of his claims at this late stage in the litigation.

For these reasons, on October 19, 2022, the Court entered a Minute Order stating that

> "[t]he Court <u>accepts Plaintiff's characterization of his claims and thus will not pass
> on the Parties' qualified immunity arguments</u>. Out of an abundance of caution,
> Plaintiff is ORDERED to file a sur-reply to the . . . Motion for Summary Judgment
> on or before 11/02/2022, limited to addressing only Defendant's new argument in
> her . . . Reply, which was made in response to Plaintiff's new argument in his . . .
> Response, concerning an official-capacity theory of relief."

[Doc. 61 (emphasis altered)]. Stated another way, the Court informed the Parties that it would

accept Plaintiff's characterization of his claims and would not consider any qualified immunity

arguments raised in the Motion for Summary Judgment. [*Id.*]. But because the Court believed

that the Reply could be construed to raise new arguments directed to those made in Plaintiff's

Response, *see* [Doc. 50 at 7 (Defendant suggesting that any official capacity claim would fail as a

matter of law)], the Court *sua sponte* permitted Plaintiff to file a sur-reply. [*Id.*].

Plaintiff did so, but despite this Court's statement that it had accepted Plaintiff's

characterization of his claims, Plaintiff continued to argue that Defendant is sued in her official,

not individual, capacity. *See generally* [Doc. 62]. Thereafter, Defendant filed an "Opposed

Motion for Leave to File Sur-Rebuttal in Response to Plaintiff's Court-Ordered Sur-Reply to

Defendant's Motion for Summary Judgment" (the "Motion to File Sur-Rebuttal"). [Doc. 63]. In

that Motion, Defendant sought leave to address the arguments raised in Plaintiff's Sur-reply. [*Id.*

at ¶ 7]. The Court ordered Defendant to file her proposed Sur-rebuttal and informed the Parties

that "[a]fter reviewing the proposed Sur-rebuttal, the Court [would] determine whether it will

entertain the Sur-rebuttal in ruling on the Motion for Summary Judgment." [Doc. 64]. Defendant

filed her Sur-rebuttal on November 7, 2022.  [Doc. 65].  In the Sur-rebuttal, Defendant argues that the Court "should . . . consider Defendant's well-grounded qualified immunity argument in her Motion for Summary Judgment."  *See* [*id.* at 1].

The Court has determined that it may appropriately rule on the Motion for Summary Judgment without considering the arguments raised in the Sur-rebuttal.  Accordingly, the Motion to File Sur-Rebuttal is respectfully **DENIED**.

### C.      Whether Summary Judgment is Appropriate on Claim Two

"An action against a person in [her] official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  "[M]unicipalities and other local government units," like Garfield County, "are included among those persons to whom § 1983 applies."  *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978).  But government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id.* "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.

Thus, to succeed on a *Monell* claim, "the plaintiff must prove (1) the entity executed a policy or custom, (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009) (citing *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000)).  Indeed, "there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable."  *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. V. Crowson*, 142

S. Ct. 224 (2021); *see also Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1275 (10th Cir. 2022). "[A] claim under § 1983 against either an individual actor or a municipality <u>cannot survive</u> a determination that there has been no constitutional violation." *Crowson*, 983 F.3d at 1186 (emphasis added).

Defendant argues—albeit in the context of her qualified immunity argument—that she did not violate Mr. Carazzco's constitutional rights. [Doc. 40 at 13–14]. Plaintiff responds that his constitutional rights were violated "when [Defendant] threw a deck of playing cards at Plaintiff to wake him up." [Doc. 48 at 11]. Specifically, he argues that a reasonable jury could conclude that Defendant's act of throwing a deck of playing cards at Plaintiff was objectively unreasonable because (1) Defendant acted intentionally; (2) Plaintiff was sleeping at the time and posed no threat to Defendant; and (3) Defendant attempted to verbally wake up Plaintiff for fewer than 10 seconds, and then threw the deck of cards within 15 seconds after she threw the toilet paper. [*Id.* at 16–17].

"An excessive force claim under the Fourteenth Amendment targets arbitrary governmental action, taken without due process." *Est. of Booker*, 745 F.3d at 423 (quotation omitted). "A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is 'objectively unreasonable.'" *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 978 F.3d 1165, 1171 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015)); *see also Kingsley*, 576 U.S. at 397 ("[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."). "Objective reasonableness under *Kingsley* turns on the 'facts and circumstances of each particular case,'" *Rowell*, 978 F.3d at 1171 (quoting *Kingsley*, 576 U.S. at 397), and a reasonableness determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. In *Kingsley*,

the Supreme Court identified non-exhaustive factors that "may bear on the reasonableness or

unreasonableness" of a defendant's actions:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury; any effort made by the [defendant] to temper or
> to limit the amount of force; the severity of the security problem at issue; the threat
> reasonably perceived by the [defendant]; and whether the plaintiff was actively
> resisting.

*Id.* This objective standard "adequately protects an officer who acts in good faith," and "[i]t is

unlikely (though theoretically possible) that a plaintiff could overcome these hurdles where an

officer acted in good faith." *Id.* at 399–400.

While Plaintiff cites *Kingsley* in his Response, [Doc. 48 at 12], he makes no argument

related to the factors identified in *Kingsley* that are relevant to the reasonableness of Defendant's

conduct. *See* [*id.* at 10–12, 16–17]. Upon review of the undisputed facts, the Parties' submitted

evidence, and the *Kingsley* factors, the Court concludes that no reasonable jury could find that

Defendant's conduct was objectively unreasonable. *See Magne v. Albers*, No. 18-cv-02741-JLK,

2021 WL 3088035, at *4 (D. Colo. July 8, 2021) (where "the undisputed evidence conclusively

show[ed] that [the defendant's] use of force was objectively reasonable," concluding that no

reasonable jury could find in favor of the plaintiff and summary judgment was appropriate), *aff'd*,

No. 21-1256, 2022 WL 2165940 (10th Cir. June 16, 2022).

Most important to the Court's conclusion is the amount of force used, which was minimal.

It is undisputed that Defendant "underhanded" the deck of cards in Plaintiff's direction. [Doc. 40-

2 at 41:15–21]. This is confirmed by the video evidence. *See* [Doc. 40-3 at 00:30–00:39]; *see*

*also Quinones v. Rollison*, No. 18-cv-1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1,

2020) (relying on video evidence to determine that "the amount of force used was small"); *Elliott*

*v. Golston*, No. 19-2767-TLP-TMP, 2022 WL 1214495, at *7 (W.D. Tenn. Feb. 17, 2022) ("Based

on the video footage, the amount of force used by Golston was minimal."), *report and recommendation adopted*, 2022 WL 853210 (W.D. Tenn. Mar. 22, 2022).   "In the Fourteenth Amendment context[,] . . . '[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'"   *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)).   Courts have concluded that a government actor acted within the bounds of the Fourteenth Amendment in circumstances similar to those presented here.   *See, e.g.*, *Hutchison v. Smith*, No. 4:20-cv-00779-LPR-JJV, 2022 WL 4089457, at *3 (E.D. Ark. June 16, 2022) (at summary judgment, concluding that the defendant's act of removing a shirt from a light fixture and throwing the shirt on the plaintiff's face when the plaintiff was sleeping, "while offensive and probably unwarranted . . ., is not sufficiently severe to sustain a constitutional violation"), *report and recommendation adopted*, 2022 WL 4087644 (E.D. Ark. Sept. 6, 2022); *Wilson v. Hartman*, No. 21-2308, 2022 WL 1062053, at *1–2 (C.D. Ill. Apr. 8, 2022) (at the motion to dismiss stage, concluding that an officer's alleged act of throwing an apple at the plaintiff, though "unprofessional and certainly not commendable," did not "rise to the level of a constitutional violation"); *Powell v. Well Path Care*, No. 6:20-cv-01934-IM, 2022 WL 684835, at *11 (D. Or. Mar. 8, 2022) (concluding, at the motion to dismiss stage, that there was no constitutional violation where the defendant allegedly threw a full roll of toilet paper at the plaintiff, hitting him in the face).[16]   This weighs significantly in Deputy Morrison's favor.

---

[16] *See also Vittetoe v. Blount Cnty.*, No. 3:17-cv-397-HBG, 2019 WL 1318246, at *13 (E.D. Tenn. Mar. 22, 2019), *aff'd*, 861 F. App'x 843 (6th Cir. 2021) ("Plaintiff argues that a reasonable jury could conclude that Defendant Atkins tapped Myers so hard that such wounds were caused. The Court disagrees and declines to find that Defendant Atkins's tapping of Myers in an attempt to wake him so that he could be arraigned constitutes excessive force as to violate Myers's constitutional rights.").

Moreover, the amount of force used was not disproportional to the need for force. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* It is undisputed that Defendant asked Plaintiff to wake him for med pass. [Doc. 40-2 at 61:18–20]. It is further undisputed that Defendant was trained that she was not allowed to enter an inmate's cell alone when the inmate was sleeping in the cell. [*Id.* at 37:21–38:12]. Furthermore, Defendant's multiple verbal attempts to wake Plaintiff were unsuccessful. [*Id.* at 37:12–17]. From Defendant's perspective, then, she was prohibited from entering the cell to tap Plaintiff awake, but also could not successfully awake Plaintiff by verbal cues. The Court finds this factor weighs in favor of Defendant.

The Court also considers Defendant's attempts to temper or limit the amount of force used. *Kingsley*, 576 U.S. at 397. Here, it is undisputed that Defendant attempted to first verbally wake Plaintiff multiple times. [Doc. 40-2 at 37:12–17]. Then, she attempted to wake Plaintiff by "overhand[ing]" a small roll of toilet paper in his direction. [*Id.* at 38:21–39:8; Doc. 40-3 at 00:18–00:25]. When this was unsuccessful, she again tried to verbally wake Plaintiff. [Doc. 40-4 at 4]. Only after these multiple attempts failed did Defendant "underhand[]" the pack of cards at Plaintiff. [Doc. 40-3 at 00:25–00:40]. Stated another way, the undisputed evidence shows that Defendant made several attempts to wake Plaintiff without using any force at all, and then attempted to wake him using a toilet paper roll. And when that failed, she picked up an arguably heavier pack of cards, but changed her method of tossing to be less forceful. Courts have found this factor weighs in favor of the defendant where the defendant used force only after less forceful

means were unsuccessfully attempted. *See, e.g.*, *Robison v. Testa*, No. 1:20-cv-00263-RAL, 2021 WL 5770211, at *5 (W.D. Pa. Dec. 6, 2021) ("[T]he record shows that Testa reasonably escalated his use of force to deploying OC spray only after his verbal and physical commands were ineffective to stop the altercation."); *Haizlip v. Alston*, No. 1:14-cv-770, 2016 WL 4184426, at *12 (M.D.N.C. Aug. 5, 2016) ("The record thus establishes that the Search Defendants attempted to gain Plaintiff's compliance before applying the necessary force to lower him into a seated position, and that, once the Search Defendants[] gained Plaintiff's compliance, they stopped using force."). The undisputed record evidence shows that Defendant attempted to limit the amount of force used, increasing the amount of force only when lesser means were unsuccessful, which weighs strongly in favor of Defendant.

With respect to the extent of Plaintiff's injury, it is undisputed that an ultrasound taken on May 17, 2019 showed "normal testicles with normal flow," "no evidence of severe traumatic injury, shattered testicle, significant testicular hematoma, and certainly nothing to suggest testicular torsion or infection such as epididymitis or orchitis." [Doc. 40-1 at 140:1–142:6]. Plaintiff has submitted evidence that he remembers "almost falling off the bunk from being [in] so much pain" after he was hit with the deck of cards. [Doc. 48-2 at 107:23–25]. Furthermore, his expert witness "believes [Plaintiff's testicular] pain to be nerve related." [Doc. 48 at ¶ 18]; *see also* [Doc. 48-4 at 110:18–24 (Plaintiff's expert opining that Plaintiff's "ongoing testicular pain" was related to the incident); *id.* at 111:12–17 (Plaintiff's expert opining that Plaintiff's nerve tissue was likely inflamed)]. But Plaintiff has not directed the Court to any evidence demonstrating the degree or amount of pain Plaintiff has suffered since the incident or the persistence of such pain, nor to any evidence detailing whether, and to what extent, Plaintiff sought medical treatment after the incident. *Cf. Santiago v. City of Yonkers*, 2015 WL 6914799, at *9 (S.D.N.Y. Oct. 30, 2015),

("While failure to seek medical treatment and lack of demonstrable injury are not fatal to an excessive force claim, the lack of evidence is not helpful to plaintiff in sustaining the court's belief that a reasonable jury could return a verdict in his favor.").

In any event, construing this evidence in the light most favorable to Plaintiff, the Court notes that while there was no discernable injury to Plaintiff, there is evidence that Plaintiff suffered some testicular pain at the time of contact and after the incident, though at an unknown degree and for an unknown period of time. Notably, Plaintiff has not directed the Court to any legal authority—nor does he argue—that the pain he experienced renders this factor in his favor. *See Robison v. Testa*, No. 1:20-cv-00263-RAL, 2021 WL 5770211, at *5 (W.D. Pa. Dec. 6, 2021) ("While unquestionably unpleasant, the temporary discomfort associated with the use of OC spray does not support a constitutional violation."). The Court is mindful, however, that the extent of injury is not dispositive: "reliance on the plaintiff's injury alone would make a constitutional violation turn on the plaintiff's attributes that may be unknown to the defendant." *Rowell*, 978 F.3d at 1174; *see also Couchon v. Cousins*, No. CV 17-10965-RGS, 2018 WL 4189694, at *4 (D. Mass. Aug. 31, 2018) (that an injury is *de minimis* is not dispositive of a Fourteenth Amendment claim). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, this factor does not weigh heavily in either direction.

And finally, as to the remaining three factors—the severity of the security problem at issue, any threat reasonably perceived by Defendant, and whether Plaintiff was actively resisting—the Court notes that it is undisputed that Plaintiff was asleep at the time of the incident and seemingly posed no threat to Defendant at the time of the use of force. But Plaintiff does not argue that these factors warrant denial of the Motion for Summary Judgment, *see* [Doc. 48], and the Court cannot

conclude that they do.  Given the minimal amount of force used, the Court is not persuaded that these factors carry significant weight here.  *See Crocker*, 995 F.3d at 1251 (even where there was no security problem, threat, or active resistance, affirming summary judgment in favor of the defendant where "there was very little 'force' used and essentially no harm done"); *see also Hutchison*, 2022 WL 4089457, at *3 (recommending granting summary judgment in favor of the defendant where minimal force was used when the plaintiff "was sleeping and pos[ed] no security threat").

Finally, the Court notes that, in arguing that a jury could find that Defendant's conduct was objectively unreasonable, Plaintiff raises no argument under *Kingsley* and fails to cite any other case law in the entirety of his argument.  [Doc. 48 at 16–17].  Instead, he states only that "[r]easonable minds could find that Defendant's act of throwing a deck of cards was unreasonable given the circumstances," suggesting that Deputy Morrison should have made more attempts to verbally wake him before using force.  [*Id.* at 17].  But the Court has already concluded that the undisputed evidence demonstrates an attempt to temper the amount of force used, and furthermore, the law does not "prescribe the ideal type or amount of force allowed.  Instead, it requires only objectively reasonable force based on all of the facts and circumstances surrounding its use." *Ayala-Rosales v. Teal*, 659 F. App'x 316, 321 (6th Cir. 2016).

For these reasons, the Court concludes that no reasonable jury could find that Defendant's act of underhanding a pack of cards in Plaintiff's direction in an attempt to wake him up for med pass, after a number of other unsuccessful attempts to wake him up, was objectively unreasonable for purposes of the Fourteenth Amendment.  And for Mr. Carrazco to succeed on his municipal liability claim, "he must show both a violation of his constitutional rights and that a policy or custom of the entity caused that violation." *Magne*, 2021 WL 3088035, at *6.  Because the Court

concludes that no reasonable jury could find a violation of Mr. Carrazco's constitutional rights, Deputy Morrison is entitled to summary judgment on Claim Two.  *Id.*  The Motion for Summary Judgment is thus **GRANTED** with respect to Claim Two.

## III.   Supplemental Jurisdiction

Plaintiff's remaining claims arise under state law.  [Doc. 1 at 4–5].  The Supreme Court and Tenth Circuit have both held that "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'"  *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)).  While not an ironclad rule inflexibly applied, the Tenth Circuit has stated that courts "usually should" decline to exercise jurisdiction in such circumstances.  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).  Furthermore, the Tenth Circuit has recognized that there are "reasons for a district court's deferral to a state court rather than retaining and disposing of state law claims itself," such as "judicial economy, fairness, convenience and comity."  *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

After the dismissal of Plaintiff's federal claims, there is no basis for federal-question jurisdiction in this case; "[u]nder those circumstances, 28 U.S.C. § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over any remaining state-law claims."  *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).  Thus, in the interest of judicial economy, and to promote the notions of comity and federalism, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and will *sua sponte* dismiss those claims

without prejudice.[17]   As a result, the Court does not reach the Parties' substantive arguments related to Claims Three and Four.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Defendant's Motion for Summary Judgment [Doc. 40] is **GRANTED in part**;

(2)   Summary judgment is **ENTERED** in favor of Defendant and against Plaintiff on Claims One and Two;

(3)   Claims Three and Four are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367;

(4)   Defendant's Rule 702 Motion to Limit Plaintiff's Treating Health Care Providers to the Four Corners of their Medical Records [Doc. 28] is **DENIED as moot**;

(5)   Defendant's Fed. R. Evid. 702 Motion to Limit or Exclude Opinion Testimony of Plaintiff's Expert Michael Maher, D.O. [Doc. 30] is **DENIED as moot**;

(6)   Plaintiff's Opposed Motion to Exclude or Limit Defendant's Expert Testimony from Fernando J. Kim, M.D., M.B.A., F.A.C.S. Under Rule 702 of the Federal Rules of Evidence [Doc. 33] is **DENIED as moot**;

---

[17] "Colorado law recognizes if a plaintiff asserts all of his or her claims, including state law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction over the state claims, the plaintiff may refile those claims in state court." *VDARE Found. v. City of Colo. Springs*, 449 F. Supp. 3d 1032, 1052 n.5 (D. Colo. 2020) (quotation and alteration marks omitted), *aff'd*, 11 F.4th 1151 (10th Cir. 2021); *see also Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (recognizing that § 1367(d) provides that the statute of limitations period for supplemental claims is tolled while the claims are pending in federal court and for 30 days after they are dismissed, unless state law provides for a longer tolling period).

(7)   Defendant's Motion to Exclude All Untimely Disclosed Expert Opinions and Analysis of Plaintiff's Retained Expert Michael E. Maher D.O. Under Fed. R. Civ. P. 26 [Doc. 44] is **DENIED as moot**;

(8)   Defendant's Opposed Motion for Leave to File Sur-Rebuttal in Response to Plaintiff's Court-Ordered Sur-Reply to Defendant's Motion for Summary Judgment [Doc. 63] is **DENIED**;

(9)   Defendant is awarded her costs pursuant to Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54.1; and

(10)  The Clerk of Court is **DIRECTED** to terminate this case.

DATED:  January 13, 2023                    BY THE COURT:

                                            _____
                                            Nina Y. Wang
                                            United States District Judge